UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**DIANE RUIZ**, on behalf of herself and all others similarly situated,

*Plaintiff,*

v.

**GOLD BOND CO LLC,**

*Defendant.*

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Diane Ruiz, individually and on behalf of all others similarly situated ("Plaintiff"), brings this class action against Gold Bond Co LLC ("Gold Bond" or "Defendant"), seeking monetary damages and other remedies. Plaintiff makes the following allegations based on the investigation of her counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge.

## INTRODUCTION

1. This case centers around the deceptive marketing and sale of Defendant's Gold Bond Plumping Collagen Body & Face Serum Lotion, sold in 2 oz., 4.3 oz., and 8 oz. sizes (the "Product").

2. Through its labeling, packaging, and advertising, Gold Bond intentionally misleads consumers into believing that the Product contains collagen by prominently displaying the term "Collagen" on the front of its packaging (the "*Collagen Representation*").

3. Contrary to the *Collagen Representation*, the Product does not contain collagen.

4. Plaintiff and other consumers purchased the Product because they reasonably believed, based on the *Collagen Representation*, that the Product contains collagen. Had Plaintiff and other consumers known that the Product does not contain collagen, they would not have

purchased the Product or would have paid significantly less for it. As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

5. Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the deceptively labeled Product during the statute of limitations period, asserting claims for intentional misrepresentation (i.e., common law fraud), negligent misrepresentation, quasi contract/unjust enrichment/restitution, violations of New York's Deceptive Business Practices Law, N.Y. Gen. Bus. Law § 349, New York's False Advertising Law, N.Y. Gen. Bus. Law § 350, and breach of express warranty under New York law, N.Y. U.C.C. § 2-313.

6. Plaintiff, on behalf of herself and other similarly situated consumers, seeks damages, restitution, declaratory relief, and all other remedies provided by applicable law or that this Court deems appropriate.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between some members of the proposed Classes and Gold Bond.

8. This Court has personal jurisdiction over Defendant because Gold Bond transacts business within the State of New York, including by marketing, distributing, and selling the Product to consumers in New York. Plaintiff's claims arise from Gold Bond's transaction of business within New York because Plaintiff purchased the deceptively labeled Product in Bronx County, NY.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchase of the deceptively labeled Product in Bronx County, NY.

## PARTIES

### Plaintiff

10. Plaintiff Diane Ruiz is a citizen of the United States and the State of New York and currently resides in Bronx County. Plaintiff Ruiz purchased the Product in or around May 2026 at a Dollar General store located in Bronx, NY.

11. When purchasing the Product, Plaintiff Ruiz saw and relied on the *Collagen Representation*. Based on this representation, Plaintiff reasonably believed that she was purchasing a body and face lotion that contained collagen. However, unbeknownst to Plaintiff Ruiz, the Product does not contain collagen. Plaintiff Ruiz would not have purchased the Product or would have paid significantly less for it had she known that it did not contain collagen. Therefore, Plaintiff Ruiz suffered injury in fact and lost money as a result of Defendant's misleading, unfair, and fraudulent practices, as described herein.

### Defendant

12. Defendant Gold Bond Co LLC is a North Carolina limited liability company with its principal place of business in New Jersey. Gold Bond markets and distributes numerous skincare products, including various creams and lotions, like the Product at issue here.

## FACTUAL ALLEGATIONS

### A. Background

13. The Product at issue in this action is the Gold Bond Plumping Collagen Body & Face Serum Lotion, sold in 2 oz., 4.3 oz., and 8 oz. sizes.

14. At all relevant times, the Product was marketed and distributed in the United States by Gold Bond.

15. At all relevant times, Gold Bond has distributed and sold the Product in the State of New York and throughout the rest of the United States. The Product is sold at national drugstore chains and other major retailers, such as Amazon.com, CVS, Walmart, and Target.

**B. <u>The Labeling and Packaging of the Product Are Deceptive and Misleading</u>**

16. The labeling and packaging of the Product are deceptive and misleading to reasonable consumers, including Plaintiff and Class members.

17. As depicted in the images below, Defendant prominently markets and labels the Product as "GOLD BOND PLUMPING COLLAGEN BODY & FACE SERUM LOTION[,]" including by prominently displaying the term "COLLAGEN" as part of the Product's name on the front of the Product's packaging.



18. Based on the *Collagen Representation*, consumers purchasing the Product reasonably believe that the Product contains collagen.

19. Contrary to the *Collagen Representation*, however, the Product does not contain collagen. Indeed, collagen does not appear anywhere in the Product's ingredient list.

20. Defendant's prominent use of "COLLAGEN" in the Product's name capitalizes on growing consumer demand for skincare products marketed by reference to specific, recognizable, and desirable ingredients they purportedly contain, including collagen.

## C. Consumers Rely on Ingredient Representations When Purchasing Skincare Products

21. Consumers expect skincare brands to provide clear and accurate information about their products.[1] This expectation is particularly important where a skincare product is marketed by reference to a specific ingredient it purportedly contains. As skincare products are increasingly marketed, differentiated, and searched for based on their purported ingredients, consumers reasonably rely on front-facing ingredient representations when selecting among competing products.

22. Collagen is one such recognizable ingredient frequently marketed in skincare products. According to consumer search data, collagen was among the most searched skincare ingredients in 2025, generating more than 318,000 searches per month, while social-media content associated with collagen generated tens of millions of views.[2] Moreover, consumer search interest in collagen was 90% higher during the past five years compared to the preceding five-year period.[3]

---

[1] *U.S. Skin Care Products Market*, Grand View Research, https://www.grandviewresearch.com/industry-analysis/us-skin-care-products-market-report (last accessed Aug. 27, 2026).

[2] *Ingredient Trends Report: The Ingredients Defining Beauty 2025*, Spate (May 2025), https://storage.googleapis.com/spate-186619/reports/us/beauty/2025-05-Ingredient%20Trends%20Report/2025%20Ingredients%20Report.pdf (last accessed Aug. 27, 2026).

[3] Google Trends, *Google*, https://trends.google.com/explore?q=collagen&date=today%205-y&geo=US (last accessed Aug. 27, 2026) (showing U.S. search interest for "collagen" over the past five years compared to the preceding five-year period).

23. Gold Bond itself recognizes this significant consumer interest in collagen and has sought to capitalize on that interest in the marketing of the Product. For example, as shown below, Gold Bond promoted the Product on its social media accounts with the phrase "collagen summer is calling[.]"[4] Moreover, Gold Bond hosted a promotional event for the Product centered around collagen, where consumers were asked questions about collagen, including whether they use collagen in their own skincare routines.[5] These marketing efforts demonstrate Gold Bond's awareness of consumer interest in collagen as a skincare ingredient and intent to capitalize on that interest.




[4] Gold Bond, Instagram (July 11, 2026), https://www.instagram.com/p/DaqBKqJD8ok/?igsh=dnpobnI4NWJ0dm1o (promoting Gold Bond Plumping Collagen Body & Face Serum Lotion).
[5] Gold Bond, Instagram (Oct. 13, 2025), https://www.instagram.com/reel/DPw5MV9CT-a/?igsh=dHFsZHcyY2o1bG5z (promoting Gold Bond Plumping Collagen Body & Face Serum Lotion).

**D. <u>The Product Does Not Contain Collagen</u>**

24. Collagen is a naturally occurring structural protein found in animals and is the most abundant protein in the human body.[6, 7] Collagen is a complex protein characterized by long amino-acid chains arranged in a distinctive triple-helix structure, which enables collagen to provide support and strength to the skin and other connective tissues.[8]

25. Collagen is composed of 19 different amino acids, including alanine, glycine, leucine, proline, phenylalanine, hydroxyproline, serine, threonine, methionine, glutamine, and tyrosine, among others.[9]

26. The Product does not contain collagen. Instead, the Product contains an ingredient identified in its ingredient list as "Tripeptide-29 (Collagen Amino Acids)." According to the European Commission's Cosmetic Ingredients database, Tripeptide-29 is a synthetic peptide consisting of only three amino acids: glycine, proline, and hydroxyproline.[10]

27. Peptides are short chains of amino acids.[11] A peptide may therefore contain amino acids that may also be present within a much larger protein, such as collagen, without being the protein itself.

---

[6] Matthew D. Shoulders & Ronald T. Raines, *Collagen Structure and Stability*, Annual Review of Biochemistry (2009), https://doi.org/10.1146/annurev.biochem.77.032207.120833 (last accessed Aug. 27, 2026).
[7] *Collagen*, Cleveland Clinic (May 23, 2022), https://my.clevelandclinic.org/health/articles/23089-collagen (last accessed Aug. 27, 2026).
[8] Jillian Kubala, *What Is Collagen, and What Does It Do for You?*, Healthline (Oct. 28, 2025), https://www.healthline.com/nutrition/collagen#what-it-is (last accessed Aug. 27, 2026).
[9] Marlena Gauza-Włodarczyk, Leszek Kubisz, & Dariusz Włodarczyk, *Amino Acid Composition in Determination of Collagen Origin and Assessment of Physical Factors Effects*, International Journal of Biological Macromolecules (Nov. 2017), https://www.sciencedirect.com/science/article/abs/pii/S0141813017315787?via%3Dihub.
[10] European Commission, *Tripeptide-29*, CosIng – Cosmetic Ingredients, https://ec.europa.eu/growth/tools-databases/cosing/details/83768 (last accessed Aug. 27, 2026).
[11] Marygrace Taylor, *Peptides: What they are, potential benefits, and safety concerns*, Harvard Health Publishing (July 7, 2026), https://www.health.harvard.edu/medications-and-treatments/peptides-what-they-are-potential-benefits-and-safety-concerns (last accessed Aug. 27, 2026).

28. Although the three amino acids that comprise Tripeptide-29 are also among the 19 amino acids that comprise collagen, Tripeptide-29 is not collagen. The fact that Tripeptide-29 shares three amino acids with collagen does not mean that Tripeptide-29 is collagen.

29. Nor does the identification of Tripeptide-29 as "Collagen Amino Acids" render the Product's labeling any less deceptive. *See Kandel v. Dr. Dennis Gross Skincare, LLC*, 721 F. Supp. 3d 291, 302 (S.D.N.Y. 2024) (recognizing that the identification of an ingredient as "collagen amino acids" does not dispel a reasonable consumer's belief that a product contains collagen and may instead reassure the consumer that collagen is present).

30. Even so, Gold Bond continues to prominently name and market the Product as "GOLD BOND PLUMPING COLLAGEN BODY & FACE SERUM LOTION," despite the fact that the Product contains no collagen.

**E. Plaintiff and Class Members Were Harmed**

31. Plaintiff and the Class members relied on the *Collagen Representation* when purchasing the Product, reasonably believing that the Product contained collagen. That belief was a significant factor in each of their decisions to purchase the Product.

32. Plaintiff and the Class members did not know, and had no reason to know, that the Product does not contain collagen. The Product is prominently labeled and advertised with the *Collagen Representation*. Nor were they required to scrutinize the Product's ingredient list to verify the accuracy of the prominent *Collagen Representation* on the front of the Product's packaging. In any event, as alleged above, the identification of Tripeptide-29 as "Collagen Amino Acids" in the Product's ingredient list does not clarify that the Product does not contain collagen.

33. Gold Bond knew or should have known that Plaintiff and Class members did and would rely on the labeling, packaging, and advertising of the Product in purchasing it, and would reasonably believe that the Product contained collagen.

34. Because the Product does not contain collagen, Gold Bond's labeling of the Product is deceptive and misleading when viewed in light of the Product's marketing and reasonable consumer expectations.

35. Each Class member has been exposed to the same deceptive practice, as the Product contains the *Collagen Representation* but does not contain collagen.

36. Plaintiff and other consumers have paid a premium for the Product. They would not have purchased the Product, or would have paid significantly less, had they known that the Product does not contain collagen. Therefore, Plaintiff and other consumers suffered injury in fact and lost money as a result of Gold Bond's misleading, unfair, and fraudulent practices, as described herein.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following Classes:

**Nationwide Class**

> All persons who, within the relevant statute of limitations period, purchased the Product in the United States of America.

**New York Subclass**

> All persons who, within the relevant statute of limitations period, purchased the Product in the State of New York.

38. Excluded from the Classes are the following individuals or entities: Gold Bond and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Gold Bond has a controlling interest; all individuals who make a timely election to

be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

39. Plaintiff reserves the right to modify or amend the definition of the proposed Classes after having had an opportunity to conduct discovery.

40. Plaintiff Ruiz is a member of the Nationwide Class and the New York Subclass.

41. Numerosity: The proposed Classes are so numerous that joinder of all members would be impracticable. The Product is sold throughout New York and the rest of the United States at national drugstore chains and other major retailers, including, but not limited to, Amazon.com, Walmart, Target, and CVS. The number of individuals who purchased the Product throughout the United States and in the State of New York during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impracticable. While the precise number of Class members and their identities are unknown to Plaintiff at this time, Class members are identifiable and ascertainable through sales records, retailer records, and other objective evidence.

42. Common Questions Predominate: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a. Whether Gold Bond misrepresented material facts in connection with the labeling, packaging, marketing, distribution, and sale of the Product;

b. Whether Gold Bond's labeling, packaging, and advertising of the Product constituted false, misleading, and/or deceptive advertising;

c. Whether Gold Bond engaged in unfair, unlawful, and/or fraudulent business practices;

d. Whether Gold Bond's unlawful conduct, as alleged herein, was intentional and knowing;

e. Whether Plaintiff and members of the Classes are entitled to damages and/or restitution, and in what amount; and

f. Whether Plaintiff and members of the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

43. Gold Bond engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Gold Bond's deceptive packaging and advertising of the Product. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

44. <u>Superiority</u>: Because of the relatively small size of the individual Class members' claims, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

45. Typicality: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Gold Bond's uniform unlawful conduct as alleged herein.

46. Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and her counsel.

47. This lawsuit is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure because Gold Bond acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

**FIRST CLAIM FOR RELIEF**
**Intentional Misrepresentation**
***On behalf of the Nationwide Class***

48. Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

49. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Gold Bond.

50. Gold Bond has willfully, falsely, or knowingly labeled, packaged, and marketed the Product with representations that the Product contains collagen, despite the fact that the Product contains no collagen. Therefore, Gold Bond has made misrepresentations as to the Product.

51. Gold Bond's misrepresentations are and were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions) because they concern the ingredients contained in the

Product, and this information is important to consumer purchasing decisions, including the decision of Plaintiff and members of the Nationwide Class to purchase the Product.

52. As the company responsible for the Product and its labeling, packaging, and marketing, Gold Bond knew or recklessly disregarded the fact that the Product does not contain collagen.

53. Gold Bond intended that Plaintiff and other consumers rely on the *Collagen Representation*, as evidenced by Gold Bond's intentional and prominent placement of "COLLAGEN" as part of the Product's name on the consumer-facing front label of the Product and throughout its marketing. In the alternative, Gold Bond acted recklessly in making the *Collagen Representation* without regard to its truth.

54. Plaintiff and members of the Nationwide Class reasonably and justifiably relied on Gold Bond's misrepresentation when purchasing the Product, and had the correct facts been known, would not have purchased the Product or would not have purchased it at the price at which it was offered.

55. Therefore, as a direct and proximate result of Gold Bond's intentional misrepresentation, Plaintiff and members of the Nationwide Class have suffered economic losses and other general and specific damages, including but not limited to the amounts overpaid for the Product, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**Negligent Misrepresentation**
***On behalf of the Nationwide Class***

56. Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

57. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Gold Bond.

58. Gold Bond labeled, packaged, and marketed the Product with representations that the Product contains collagen, despite the fact that the Product contains no collagen. Therefore, Gold Bond has made misrepresentations as to the Product.

59. Gold Bond's misrepresentations regarding the Product are material to a reasonable consumer because they concern the ingredients contained in the Product. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

60. At all relevant times, Gold Bond knew or was negligent in not knowing that the Product does not contain collagen. Gold Bond had no reasonable grounds for believing that its representations were true and not misleading.

61. Gold Bond intended that Plaintiff and other consumers rely on the *Collagen Representation*, as evidenced by Gold Bond's intentional and prominent placement of "COLLAGEN" as part of the Product's name on the consumer-facing front label of the Product and throughout its marketing. Plaintiff and members of the Nationwide Class reasonably and justifiably relied on Gold Bond's negligent misrepresentation when purchasing the Product, and had the correct facts been known, would not have purchased the Product or would not have purchased it at the price at which it was offered.

62. Therefore, as a direct and proximate result of Gold Bond's negligent misrepresentation, Plaintiff and members of the Nationwide Class have suffered economic losses and other general and specific damages, including but not limited to the amounts overpaid for the

Product, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
***On behalf of the Nationwide Class***

63. Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

64. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Gold Bond.

65. As alleged herein, Gold Bond has intentionally and recklessly made misleading representations to Plaintiff and members of the Nationwide Class to induce them to purchase the Product. Plaintiff and members of the Nationwide Class reasonably relied on the misleading representations and purchased a Product that did not contain the ingredient it was represented to contain. Plaintiff and members of the Nationwide Class therefore were induced by Gold Bond's misleading representations to purchase the Product and paid more money to Gold Bond, directly and/or indirectly, than they otherwise would have paid.

66. Plaintiff and members of the Nationwide Class conferred a benefit upon Gold Bond, as Gold Bond retained monies directly and/or indirectly paid to it by Plaintiff and members of the Nationwide Class.

67. The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Nationwide Class—i.e., Plaintiff and members of the Nationwide Class did not receive the full value of the benefit.

68. Therefore, it is inequitable and unjust for Gold Bond to retain the profits, benefits, or compensation conferred upon it without compensating Plaintiff and members of the Nationwide Class for the difference between the value of the benefits promised and the value actually received.

69. As a direct and proximate result of Gold Bond's unjust enrichment, Plaintiff and members of the Nationwide Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Gold Bond from its deceptive, misleading, and unlawful conduct as alleged herein.

**<u>FOURTH CLAIM FOR RELIEF</u>**
**Violation of New York General Business Law § 349**
***On behalf of the New York Subclass***

70. Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Gold Bond.

72. New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ." GBL § 349(a).

73. As alleged herein, Gold Bond misrepresented that the Product contains collagen, despite the fact that the Product contains no collagen, in violation of GBL § 349.

74. The foregoing deceptive acts and practices were consumer-oriented in that they were directed at Plaintiff and members of the New York Subclass.

75. Gold Bond's misrepresentation regarding the Product is material to reasonable consumers because it concerns the ingredients contained in the Product, including whether the Product contains collagen.

76. Plaintiff and members of the New York Subclass have been injured as a direct and proximate result of Gold Bond's violations described above, as they would not have purchased the Product, or would have paid significantly less for it, had they known that the Product does not contain collagen.

77. As a result of Gold Bond's unlawful actions, Plaintiff and members of the New York Subclass seek to recover actual damages, fifty dollars, or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**<u>FIFTH CLAIM FOR RELIEF</u>**
**Violation of New York General Business Law § 350**
***On behalf of the New York Subclass***

78. Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

79. Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Gold Bond.

80. GBL § 350 provides in relevant part: "False advertising in the conduct of any business, trade or commerce . . . in this state is hereby declared unlawful."

81. In turn, GBL § 350-a defines "false advertising" as:

> advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

82. As set forth herein, Gold Bond's *Collagen Representation* is false and misleading because Gold Bond prominently represents that the Product contains collagen when, in fact, the Product contains no collagen.

83. Gold Bond knew, or reasonably should have known, that the *Collagen Representation* was false or misleading.

84. Gold Bond's conduct is further misleading because, through the *Collagen Representation*, Gold Bond induced consumers to purchase a Product that does not contain the ingredient it is represented to contain.

85. The foregoing misleading acts and practices were consumer-oriented in that they were directed at Plaintiff and members of the New York Subclass.

86. Gold Bond's *Collagen Representation* is material to reasonable consumers because it concerns the ingredients contained in the Product, including whether the Product contains collagen.

87. The foregoing misrepresentation has resulted in consumer injury or harm to the New York public.

88. Plaintiff and members of the New York Subclass have been injured as a direct and proximate result of Gold Bond's violations of GBL § 350 as described above, as they would not have purchased the Product, or would have paid significantly less for it, had they known that the Product does not contain collagen.

89. As a result of Gold Bond's unlawful actions, Plaintiff and members of the New York Subclass seek to recover actual damages or five hundred dollars, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**SIXTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**New York Uniform Commercial Code § 2-313**
***On behalf of the New York Subclass***

90. Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

91. Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Gold Bond.

92. N.Y. U.C.C. § 2-313(1)(a)-(b) provides in relevant part that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise" and that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

93. Gold Bond expressly warranted through the Product's labeling and packaging that the Product contains collagen. Specifically, Gold Bond prominently identifies and describes the Product as "GOLD BOND PLUMPING COLLAGEN BODY & FACE SERUM LOTION," including by prominently displaying the term "COLLAGEN" as part of the Product's name on the front of the Product's packaging.

94. The *Collagen Representation* constitutes an affirmation of fact regarding the Product and a description of the Product and became part of the basis of the bargain when Plaintiff purchased the Product. Accordingly, the *Collagen Representation* created an express warranty that the Product would conform to that representation and contain collagen.

95. Gold Bond breached this express warranty because, contrary to the *Collagen Representation*, the Product does not contain collagen.

96. In or around May 2026, Plaintiff discovered Gold Bond's breach of the foregoing express warranty. Pursuant to N.Y. U.C.C. § 2-607, on June 9, 2026, counsel for Plaintiff mailed a pre-suit notice and demand letter by certified mail, with return receipt requested, to Gold Bond. The letter notified Gold Bond of its breach of the express warranty made to Plaintiff under N.Y. U.C.C. § 2-313 and demanded that Gold Bond correct, repair, replace, or otherwise rectify its unlawful conduct, which Gold Bond did not do.

97. Plaintiff and members of the New York Subclass saw and relied on the *Collagen Representation* when purchasing the Product and reasonably believed that the Product contained collagen. Had Plaintiff and members of the New York Subclass known that the Product did not contain collagen, they would not have purchased the Product or would have paid significantly less for it.

98. Plaintiff and members of the New York Subclass have suffered economic injury and are entitled to recover damages and all other relief available under law as a direct and proximate result of Gold Bond's breach of express warranty, as described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully prays for the following relief:

A. Certification of this case as a class action on behalf of the Nationwide Class and the New York Subclass, both defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class counsel;

B. A declaration that Gold Bond's actions, as described herein, violate the laws described herein;

C. An award to Plaintiff and the proposed Classes of restitution and/or equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Gold Bond has obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair, and fraudulent business practices described herein;

D. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Gold Bond's conduct;

E. An award of punitive damages;

F. An award to Plaintiff and her counsel of their reasonable expenses and attorneys' fees;

G. An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

H. For such further relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the proposed Classes, hereby demands a trial by jury on all claims so triable.

Date: August 27, 2026

**FARUQI & FARUQI, LLP**

By: */s/ Lubna M. Faruqi*
Lubna M. Faruqi
Aisha Z. Iftikhar
685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: lfaruqi@faruqilaw.com
aiftikhar@faruqilaw.com

*Attorneys for Plaintiff and proposed Classes*